UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re KIMBERLY A. LITTMAN, | Chapter 7 |
| Debtor. | No. 11-38875 |
| SUSAN K. CERVAC, | 14 C 9274 |
| Plaintiff-Appellee, | Judge Feinerman |
| vs. | Appeal from: No. 12 A 155 |
| KIMBERLY A. LITTMAN, | |
| Defendant-Appellant. | |

**MEMORANDUM OPINION AND ORDER**

This appeal is from the bankruptcy court's award of summary judgment against the debtor in an adversary proceeding. For the following reasons, the bankruptcy court's judgment is vacated and the case remanded for further proceedings.

**Background**

Except where noted, the background is taken from the bankruptcy court's opinion. 517 B.R. 847 (Bankr. N.D. Ill. 2014) (reproduced at Doc. 1-11 at 484-85 and Doc. 1-12 at 1-20).

Kimberly Littman (the debtor), Susan Cervac, and Joseph Cervac are the children of Norma Cervac. In 1999, Norma created a living trust and appointed Kimberly as trustee, instructing her to administer the trust for the benefit of all three children upon Norma's death. Norma died in 2006. In January 2009, Susan and Joseph sued Kimberly, alleging that she misappropriated trust assets. Around that time, Susan began making phone calls to Kimberly and Kimberly's daughters and friends. According to Kimberly, Susan repeatedly accused her of stealing from their mother's estate and threatened her with jail. Susan wrote emails to

1

Kimberly's daughter "stating things that no daughter should hear about her mother from her aunt." Doc. 12 at p. 7, ¶ 24. Apparently the abuse took its toll. "At the time of the harassment," Kimberly says, her "emotional state was very difficult; she was trying to deal with [Susan]'s issues and … get [Susan] out of her life." *Id*. at p. 8, ¶ 35.

In October 2009, Kimberly attended a meeting with her two daughters, her son, a close friend, and a cousin. Kimberly claims that she agreed to give Susan three storage units' worth of furniture, artwork, porcelain, and other family memorabilia. Susan was not present at the meeting, but she later cleaned out the storage units with the help of several family members, including Kimberly's son. Susan placed some of the items from the storage units in an empty house so they could be staged and sold by Leslie Hindman Auctioneers. This property netted approximately $3,500. Susan also sold a silver set and some dishware for $1,000 and collected $1,527 more at garage sales. A few pieces of property were abandoned during the loading process, including a large steel abstract sculpture by the artist Jene Highstein. *See* www.guggenheim.org/new-york/collections/collection-online/artists/bios/1011/Jene%20Highstein. Kimberly's son ultimately left the sculpture next to the dumpster because it was too heavy to load onto the truck; it has since vanished. Some other property, including a lamp, a statute, and a food processor, remained in Susan's possession.

Approximately one month after Susan took away the items from the storage units, the siblings settled their state court lawsuit. Kimberly, who was not represented by counsel, signed an agreed order prepared by Susan and Joseph's lawyer. While the parties do not give precise dates, they agree that the property transfer from Kimberly to Susan predated the agreed order. Doc. 13 at 10; Doc. 12 at p. 18, ¶ 171. The order provided that, within two years, Kimberly would pay total restitution to Susan of $49,451.60: $21,286.60 for improperly disbursed estate

funds; $13,955 for attorney fee and costs; $14,000 for an outstanding loan; and $300 for landscaping services. Doc. 1-3 at p. 22, ¶¶ 2, 5. The order also provided that Kimberly would pay Joseph $24,426.60. Doc. 1-3 at p. 22, ¶ 3. The order required Kimberly to "allocate twenty percent (20%) of her net monthly income to the restitution payments" and "to sell whatever assets she may have to satisfy" her obligations. *Id*. at pp. 22-23, ¶¶ 4, 7. Kimberly never sold any assets or made monthly payments as a percentage of her income. However, in January 2011, she did assign a portion of two asbestos settlements to Susan.

In September 2011, shortly before the two-year restitution period had run, Kimberly declared bankruptcy. She listed the $49,451.60 debt to Susan as a disputed claim. In November and December 2011, Kimberly sent Susan three checks totaling $700, which she later said was an attempt to stop Susan from further harassing her.

On January 31, 2012, Susan initiated an adversary proceeding to declare the $49,561.60 nondischargeable under 11 U.S.C. § 523(a)(2)(A) (debt obtained by false pretenses or fraud), § 523(a)(4) (debt for fraud or defalcation while acting in a fiduciary capacity), and § 523(a)(6) (debt for willful and malicious injury to another). Kimberly answered Susan's complaint and twice moved unsuccessfully to dismiss the adversary proceeding. Kimberly's counsel then withdrew. The bankruptcy court instructed Kimberly that she would be responsible for complying with all procedural rules and deadlines, but agreed to stay the proceedings for 21 days to give her time to find a new lawyer. Kimberly elected to continue *pro se*.

Susan moved for summary judgment. The bankruptcy court set a briefing schedule and once again instructed Kimberly that she was responsible for complying with the court's procedural rules. Kimberly did not file a brief in opposition to summary judgment and did not appear at the status hearing once the briefing schedule was complete. The bankruptcy court

granted Susan partial summary judgment, finding that $35,241.60—the portion of the debt attributable to the improperly disbursed funds and attorney fees—was nondischargeable but that the rest of the debt could be discharged. Doc. 1-8 at 42-48. The court entered judgment for Susan in the amount of $35,241.60. Doc. 1-12 at 27.

The following day, Kimberly, who had retained new counsel, filed a motion to vacate the judgment on account of excusable neglect. Her excuse was that she had understood the court to be ordering her to file her summary judgment response in person, and that she had arrived with papers in hand only to find a dark courtroom. Kimberly said that she then called chambers and learned of the post-briefing hearing, but wrote down the wrong date in her journal. When she finally learned of the correct date, she attempted to retain counsel on short notice but was unhappy with their proposed retention agreement; she could not attend the hearing herself because she could not get away from work. Doc. 1-8 at 50-51.

The court denied the motion to vacate, noting that it had warned Kimberly about following procedural rules and that she had confirmed that she understood the briefing schedule. *Id*. at 56-60. Kimberly then filed a second motion to vacate accompanied by a notice of appeal. The bankruptcy court held a three-day evidentiary hearing at which Susan, Kimberly, Kimberly's children, and others testified. Doc. 8 at 1-488. After post-hearing briefing, the court denied the second motion. 517 B.R. at 860-68. The court credited Kimberly for the value of the property that Susan had auctioned or sold, but applied those sums to the dischargeable portion of Kimberly's debt. *Id*. at 868. The court also ordered Susan to return any unsold property to Kimberly. *Id*. at 868-69.

This appeal followed, with Kimberly, the appellant, once again proceeding *pro se*. Jurisdiction is proper under 28 U.S.C. § 158(a)(1), which grants the district court jurisdiction to

hear appeals from bankruptcy court final judgments entered in cases referred under 28 U.S.C. § 157. *See Zedan v. Habash*, 529 F.3d 398, 402 (7th Cir. 2008) ("[T]he test we have utilized to determine finality under § 158(d) is whether an order resolves a discrete dispute that, but for the continuing bankruptcy, would have been a stand-alone suit by or against the trustee .... [T]he final disposition of any adversary proceeding falls within our jurisdiction."); *Fifth Third Bank v. Edgar Cnty. Bank & Trust*, 482 F.3d 904, 905 (7th Cir. 2007) ("A final resolution of any adversary proceeding is appealable, as it is equivalent to a stand-alone lawsuit.").

## Discussion

As permitted by Federal Rule of Bankruptcy Procedure 8002(b)(3), Kimberly filed an amended notice of appeal challenging both the entry of summary judgment and the denial of her second motion to vacate the judgment. Doc. 1 at 6-7. Although Kimberly's Rule 8006 statement of issues lists seventeen different issues on appeal, *id*. at 16-18, her brief discusses only four, none of which focus on the summary judgment decision itself. The other thirteen issues are forfeited. *See Batson v. Live Nation Entm't, Inc.*, 746 F.3d 827, 833 (7th Cir. 2014) ("[A]s the district court found, the musical diversity argument was forfeited because it was perfunctory and underdeveloped."). Her brief's contents are lifted almost entirely from proposed findings of fact and conclusions of law submitted by Kimberly's previous lawyers on the second motion to vacate the judgment. *Compare* Doc. 12 *with* Doc. 1-11 at 2-33. Specifically, Kimberly contends that the bankruptcy court should have vacated or amended its judgment because: (1) her transfer to Susan of property from the storage units was an accord and satisfaction of the underlying debt, Doc. 12 at 25-29; (2) the state court judgment was the product of moral duress and therefore is void, *id*. at 30-31; (3) even if there was no accord and satisfaction, the transfer satisfied the debt because the property—including the Highstein sculpture, which Kimberly faults Susan for

5

losing—was worth more than $46,000, *id*. at 31-32; and (4) Kimberly's failure to oppose the summary judgment motion was due to excusable neglect, *id*. at 32.

The motion to vacate was brought pursuant to Bankruptcy Rules 9023 and 9024, which incorporate Civil Rules 59 and 60, respectively. Like Civil Rule 59, Bankruptcy Rule 9023 allows a court to alter or amend a judgment if the movant presents newly discovered evidence or points to evidence that clearly establishes a manifest error of law or fact. *See In re Prince*, 85 F.3d 314, 324 (7th Cir. 1996). Rule 60 provides that a "court may relieve a party … from a final judgment" for a variety of reasons, including that "the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable." Fed. R. Civ. P. 60(b). Denials of motions under Bankruptcy Rules 9023 and 9024 are reviewed for abuse of discretion. *See Prince*, 85 F.3d at 324; *In re Childress*, 851 F.2d 926, 928 (7th Cir. 1988).

For present purposes, it suffices to discuss only one of Kimberly's four arguments: whether the bankruptcy court erred in concluding that there had been no accord and satisfaction of the underlying debt. Under Illinois law, which the parties agree applies, an accord and satisfaction "is a contractual method of discharging a debt or claim" that requires "(1) a *bona fide* dispute, (2) an unliquidated sum, (3) consideration, (4) a shared and mutual intent to compromise the claim, and (5) execution of the agreement." *Saichek v. Lupa*, 787 N.E.2d 827, 832 (Ill. 2003). The requirement of a *bona fide* dispute over the debt is important to "insure that the necessary consideration is present to create the contract." *Lowrance v. Hacker*, 866 F.2d 950, 953 (7th Cir. 1989) (Illinois law). In other words, "[a]ccord and satisfaction presuppose that the parties disputed the amount due but agreed to give and accept something other than that which they thought was due in order to settle a claim." *Saicheck*, 787 N.E.2d at 833. Susan contends

6

that the transfer of property was not an accord and satisfaction, but rather a partial payment of Kimberly's outstanding debt. Doc. 13 at 18-22.

The bankruptcy court rejected Kimberly's accord and satisfaction argument on two grounds. First, the court concluded *sua sponte* that the *Rooker-Feldman* doctrine deprived it of jurisdiction even to consider the argument. 517 B.R. at 862, 864. Kimberly does not mention, let alone challenge, the bankruptcy court's *Rooker-Feldman* analysis. Normally, it would follow that the bankruptcy court's decision on this point should be affirmed, for "[i]n situations in which there is one or more alternative holdings on an issue, … failure to address one of the holdings results in a waiver of any claim of error with respect to the court's decision on that issue." *Maher v. City of Chicago*, 547 F.3d 817, 821 (7th Cir. 2008). This is so even though the forfeiture involves a question of subject matter jurisdiction. True enough, it is axiomatic that "[n]o party can waive or forfeit *a lack* of subject-matter jurisdiction, which [the court] must enforce even if everyone else has ignored it." *United States v. Adigun*, 703 F.3d 1014, 1022 (7th Cir. 2012) (emphasis added, internal quotation marks omitted); *see also Travelers Prop. Cas. v. Good*, 689 F.3d 714, 718 (7th Cir. 2012) ("Jurisdictional *objections* cannot be forfeited or waived, of course, for this court has an independent obligation to satisfy itself that federal subject matter jurisdiction exists.") (emphasis added, internal quotation marks omitted); *Dexia Credit Local v. Rogan*, 602 F.3d 879, 883 (7th Cir. 2010) ("neither the parties nor their lawyers may waive arguments that the court *lacks* jurisdiction") (emphasis added). However, the *proponent* of subject matter jurisdiction, as with any party that bears the burden on a particular point, may forfeit an argument that could have been made to *support* jurisdiction. *See Travelers Prop. Cas.*, 689 F.3d at 718 ("[t]he court need not bend over backwards to construct alternative theories to persuade itself that subject matter jurisdiction exists"); *NetworkIP, LLC v. FCC*, 548 F.3d 116,

120 (D.C. Cir. 2008) ("arguments in favor of subject matter jurisdiction can be waived by inattention or deliberate choice"); *W.C. Motor Co. v. Talley*, 63 F. Supp. 3d 843, 852 (N.D. Ill. 2014) (same); *Cicero-Berwyn Elks Lodge No. 1510 v. Philadelphia Ins. Co.*, 2013 WL 1385675, at *2 (N.D. Ill. Apr. 4, 2013) (same). That said, Kimberly is *pro se*, so some leeway is warranted, particularly where, as here, the bankruptcy court raised the jurisdictional issue on its own accord.

The *Rooker-Feldman* doctrine holds that lower federal courts have no jurisdiction to hear "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). So phrased, the doctrine does not apply to Kimberly's post-judgment motion to vacate in the bankruptcy court. Kimberly did not "bring" a case; rather, she was the defendant in an adversary proceeding over which the bankruptcy court had already found jurisdiction. 517 B.R. at 851 (stating that the adversary proceeding was a core proceeding under 28 U.S.C. § 157(b)). The bankruptcy court nevertheless concluded that *Rooker-Feldman* applied because Kimberly's argument for post-judgment relief would necessarily undermine the validity of the state court judgment, reasoning:

> This argument [*i.e.*, that a transfer of property satisfied a debt later memorialized in the agreed order] is contrary to the plain language and logical import of the State Court Judgment. There is no logical interpretation of the State Court Judgment that does not result in the conclusion that on that date of the judgment, the Debtor owed the Plaintiff the amounts set forth therein. It would be meaningless for a court to enter an order memorializing an obligation that had previously been satisfied.
>
> Put in other terms, what this argument … invite[s] this court to do is conclude that the State Court erred when it entered the State Court Judgment. Whether the State Court erred in entering the State Court Judgment despite … the Transfer … is 'inextricably intertwined' with the State Court Judgment itself.

8

> … That is simply not reviewable in the federal courts, and the Debtor's arguments in this regard are therefore rejected on jurisdictional grounds.

*Id.* at 864 (quoting *Kelley v. Med-1 Solutions, LLC*, 548 F.3d 600, 603 (7th Cir. 2008)). The bankruptcy court believed a similar rationale applied to Kimberly's moral duress argument. *Id.* at 862-63.

Kimberly's motion to vacate did not implicate the *Rooker-Feldman* doctrine. Recent Seventh Circuit decisions have cast some doubt on whether the "inextricably intertwined" standard set forth in *Kelly v. Med-1 Solutions* is still valid. *See Iqbal v. Patel*, 780 F.3d 728, 730 (7th Cir. 2015); *Richardson v. Koch Law Firm, P.C.*, 768 F.3d 732, 734 (7th Cir. 2014); *cf. Dawaji v. Kohlhoss*, 2014 WL 4913741, at *3 (N.D. Ill. Sept. 30, 2014) (noting that the Seventh Circuit has not abandoned the standard), *on appeal*, No. 14-3238 (7th Cir.). But regardless, even under *Kelly*, an argument is not inextricably intertwined with a state court judgment just because the argument implies that the judgment was wrong. That is, the *Rooker-Feldman* doctrine does not apply merely because a claim "denies a legal conclusion that a state court has reached in a case to which [s]he was a party." *GASH Assocs. v. Vill. of Rosemont*, 995 F.2d 726, 728 (7th Cir. 1993). Rather, "[t]he determination of whether a federal claim is 'inextricably intertwined' hinges on whether it alleges that the supposed injury was caused by the state court judgment, or, alternatively, whether the federal claim alleges an independent prior injury that the state court failed to remedy." *Brown v. Bowman*, 668 F.3d 437, 442 (7th Cir. 2012). The bankruptcy court did not attempt this analysis. Nor is it clear how it could have. Kimberly's motion to vacate did not allege any injury from the state court judgment; it merely contended that debt underlying the bankruptcy court's judgment had already been satisfied. *Cf. Bryan v. Erie Cnty. Office of Children & Youth*, 752 F.3d 316, 321 (3d Cir. 2014) (noting, with respect to Rule 60(b)(5), that

9

"jurisdiction to enforce a judgment necessarily includes the jurisdiction to declare the judgment satisfied").

The bankruptcy court understandably was concerned that Kimberly not be permitted to use the discharge proceedings as a means of circumventing the state court judgment. Yet the doctrinal solution to that concern is preclusion, grounded in 28 U.S.C. § 1738, not *Rooker-Feldman*. *See First Weber Grp., Inc. v. Horsfall*, 738 F.3d 767, 772 (7th Cir. 2013) ("A state court judgment is entitled to the same preclusive effect in federal court as that judgment would have in state court. … This rule applies with equal force to bankruptcy cases."). "Equating the *Rooker-Feldman* doctrine with preclusion is natural; both sets of principles define the respect one court owes to an earlier judgment. But the two are not coextensive." *GASH Assocs.*, 995 F.2d at 728; *see also Arnold v. KJD Real Estate, LLC*, 752 F.3d 700, 706 (7th Cir. 2014) ("Courts often confuse *Rooker-Feldman* cases with cases involving ordinary claim or issue preclusion.").

*In re Bulic*, 997 F.2d 299 (7th Cir. 1993), which involved a family feud similar to Susan and Kimberly's, illustrates the point. *Bulic* involved a dispute between siblings; a state court judgment followed by bankruptcy; an adversary proceeding to declare the debt nondischargeable; and an attempt by the debtor to call the state court judgment into question. The Seventh Circuit rejected the debtor's argument that "the issue of the validity and amount of Ivan's [the creditor's] claim must be re-examined by the bankruptcy court," explaining:

> Even if the bankruptcy court's equitable powers are great, there are limits to that authority. One of them is 28 U.S.C. § 1738, the statutory clause requiring that state court judgments be given full faith and credit in federal courts as they would in the state that issued them. Thus, the bankruptcy court was required to find that the Bulics owed Ivan Bulic the amount entered in the state court judgment, since Indiana courts would find that judgment preclusive.

10

*Id*. at 304 (citations omitted). To similar effect, see *Adams v. Adams*, 738 F.3d 861 (7th Cir. 2013), which expressly rejected the creditor's *Rooker-Feldman* argument, *id*. at 864 n.2, but concluded that underlying state court judgments precluded the debtor from arguing that the obligation had been fully satisfied or procured by duress or fraud. *Id*. at 864-66.

The bankruptcy court's alternative ground for rejecting Kimberly's accord and satisfaction defense is that even if it had jurisdiction, "the briefest of inquiries into the law of accord and satisfaction" showed that the argument failed on the merits. The bankruptcy court reasoned:

> Under Illinois law, "an 'accord and satisfaction' is an agreement between parties which settles a *bona fide* dispute over an unliquidated sum." *In re W. Side Cmty. Hosp., Inc.*, 112 B.R. 243, 255 (Bankr. N.D. Ill. 1990) (Schmetterer, J.). In order to prove an accord and satisfaction exist, a party must prove by a preponderance of the evidence: (i) "a dispute between the parties"; (ii) "a tender with the explicit understanding of both parties that it was in full payment of all demands"; and (iii) "an acceptance by the creditor with the understanding that the tender is accepted in full payment." *Id*. The Debtor has not shown that there is an objective basis for either a factual or a legal dispute as to the validity of a debt. *W. Side Cmty. Hosp., Inc.*, 112 B.R. at 253 (citing *In re Busick*, 831 F.2d 745, 750 (7th Cir. 1987)). Mere assertion of the existence of a dispute, however, does not establish it. *Sherman v. Rokacz*, 538 N.E.2d 898 (Ill. App. 1989).

517 B.R. at 865 (citations shortened).

The bankruptcy court's conclusion rests on the view that Kimberly could not merely assert the existence of a *bona fide* dispute over the debt at the time of the property transfer. Yet Susan *conceded* this element of the accord and satisfaction doctrine in the adversary proceeding, and does so again on appeal. Doc. 13 at 19 ("Appellant knew there was a debt owed to Appellee. … The only dispute was the amount owed."); Doc. 1-11 at 469 (same). Settled law holds that a dispute over the amount owed satisfies the first element of accord and satisfaction. *See Saicheck*, 787 N.E.2d at 833 ("[a]ccord and satisfaction presuppose that the parties disputed the amount

11

due"); *Morel v. Coronet Ins. Co.*, 509 N.E.2d 996, 1000 (Ill. 1987) ("accord and satisfaction requires certain factual findings, such as a *bona fide* dispute over an amount due").

In sum, the bankruptcy court erred in holding that the *Rooker-Feldman* doctrine foreclosed Kimberly's accord and satisfaction defense, and also in holding that Kimberly had not established a *bona fide* dispute over the amount of the debt. It is true that courts have significant leeway to grant or deny post-judgment relief. *See Bakery Mach. & Fabrication, Inc. v. Traditional Baking, Inc.*, 570 F.3d 845, 858 (7th Cir. 2009) (stating that the decision involves "discretion piled on discretion"). But a decision cannot stand when it "is premised on an incorrect legal principle or a clearly erroneous factual finding." *In re KMart Corp.*, 381 F.3d 709, 713 (7th Cir. 2004); *see also Colon v. Option One Mortg. Corp.*, 319 F.3d 912, 916 (7th Cir. 2003) ("a court necessarily abuses its discretion when its decision is based solely on an erroneous conclusion of law"). So the case will be remanded, although this decision does not foreclose the bankruptcy court from denying Kimberly's motion to vacate on any of the other grounds presented by Susan.

**Conclusion**

For the foregoing reasons, the bankruptcy court's judgment is vacated and the case remanded for further proceedings. The court notes that any arguments other than the four that Kimberly actually pressed in this appeal have been forfeited and are outside the scope of the remand. *See United States v. Adams*, 746 F.3d 734, 744 (7th Cir. 2014) ("The law of the case doctrine is a corollary to the mandate rule and prohibits a lower court from reconsidering on remand an issue expressly or impliedly decided by a higher court absent certain circumstances. Thus, the law of the case doctrine precludes a defendant from raising an argument not raised during his first appeal.") (internal quotation marks and citation omitted); *Kovacs v. United States*,

739 F.3d 1020, 1024 (7th Cir. 2014) ("A court to which a case has been remanded may address only the issue or issues remanded, issues arising for the first time on remand, and issues that were timely raised but which remain undecided."); *United States v. Husband*, 312 F.3d 247, 250 (7th Cir. 2002) ("[T]his court does not remand issues … when those issues have been waived or decided.").

August 18, 2015

_____
United States District Judge